UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA L. ATHERTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4.06CV01481 CDP |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the

Commissioner's final decision denying Plaintiff Barbara Atherton's application

for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C.

§§ 401, et seq. Atherton claims that she is disabled because of back pain

following lumbar stabilization surgery. The Administrative Law Judge found that

Atherton was not disabled. Because I find that the decision denying benefits was

supported by substantial evidence, I will affirm the decision.

## Procedural History

Atherton filed her application for a Period of Disability and Disability

Insurance Benefits pursuant to Title II of the Social Security Act on March 17,

1

2004.  Atherton alleged that she has been disabled since April 3, 2002 because of lumbar degenerative disc disease.  The claim was administratively denied on April 27, 2004.  Atherton filed a request for a hearing on May 12, 2004, and the hearing was held on November 24, 2004.  The Administrative Law Judge rendered her decision on September 20, 2005 in which she denied Atherton disability insurance benefits.  On August 10, 2006, the Appeals Council denied the request for review of the decision of the ALJ.

## Evidence Before the Administrative Law Judge

Atherton was 37 years old at the time of the hearing.  She is married and has two children.  She attended school through the eighth grade and has received three months of training as a blackjack dealer.  Atherton has been employed as a blackjack dealer, a cashier at various department stores, a waitress, and as the supervisor of an auto detailing crew at a car dealership.  In this latter position, she supervised three employees.

While at work as the supervisor of a car dealership on April 3, 2002, Atherton was thrown from the back of a golf cart and injured her back.  She has a pending worker's compensation claim regarding the incident.  She waited two days before she was sent to the hospital.  She has undertaken physical therapy, injections, muscle relaxers and pain medication.  She also had surgery on January

5, 2004. Before surgery, she had pain in her back and in her right leg, but after the surgery, she has little pain in her right leg. Her surgeon estimated that she would receive eighty percent relief of her pain from the surgery.

Atherton testified that she has constant pain in her back. Some days the pain is not so bad, while some days it is really bad. She has more bad days than good days. Staying in one position for a sustained period of time makes the pain worse. Her medication does help to alleviate some of the pain. She has side effects from the medication, including drowsiness and inability to drive.

Atherton has not worked since April of 2002. She does light household work such as washing dishes, carrying the laundry down to the laundry area, mopping and cooking. She watches television and uses her computer for short periods of time. She smokes. She very seldom goes to restaurants or movies. Atherton estimates that she can stand or sit for ten minutes at a time, can walk three or four blocks, and can lift around twenty pounds.

The ALJ submitted interrogatories to a vocational expert, who opined that, if plaintiff's residual capacity was as the ALJ posited, Atherton could perform her past relevant work as a gambling dealer. Atherton's counsel then submitted an interrogatory to the vocational expert, and in answering that question the expert opined that if Atherton's residual functional capacity was as she posited (which

included a requirement that she rest for four hours in any eight hour work period) that there were no jobs she could perform.

## **Medical Records**

Atherton received her injury on April 3, 2002. On April 18, 2002, she was seen by Ravi Yadava, M.D. Dr. Yadava prescribed physical therapy and medication, while noting that Atherton "displays a significant amount of symptom magnification of pain behavior." He also found "a significant amount of disparity between her functional abilities and her objective physical exam findings." Atherton underwent physical therapy at ProRehab, but did not report improvement. Her therapist, James V. Host, MS, PT, noted on May 1, 2002 that her complaints "do not correlate with expected indicators of pain." Host also found that Atherton reacted positively to several Waddell tests,[1] including positive axial loading, simulated rotation distraction straight leg raising, superficial tenderness, and overreaction.

Atherton was released to return to work by Dr. Wagner on July 10, 2002. On July 11, 2002, Atherton went to the emergency room at St. Anthony's Medical Center after leaving work due to pain in her back. Lumbar spine x-rays were

---

[1]Waddell signs are indications of non-organic causes of back pain.

negative.

Atherton was examined by Charles Wetherington, M.D. on May 15, 2003. She was diagnosed with right sacroilitis and lumbar myofascial pain. Dr. Wetherington found that Atherton had "quite significant tenderness over the right sacroiliac joint" and "some mid-line tenderness over the L5-S1 region." He suggested that Atherton undergo a right sacroiliac joint injection, as well as trigger point injections, but did not feel that her case warranted surgery at that time.

Atherton was examined by Steven Granberg, M.D., a pain specialist, on May 28, 2003. Her pain was in her lower back with radiation to the posterior aspect of her right lower extremity into the arch of her foot. The pain was constant, and she had not obtained relief from medication or a steroid injection. Dr. Granberg found that Atherton had a "markedly antalgic, guarded type of gait." Her right lower extremity had generalized 4/5 weakness in all muscle groups. She had tenderness throughout her lumbar paraspinous muscles as well as overlying her SI joint bilaterally. Atherton received three steroid injections from Dr. Granberg in June and July of 2003, through which she only achieved temporary relief.

On August 5, 2003, Atherton was again examined by Dr. Wetherington. She underwent a lumbar myelogram, which revealed a slight bulge at L5-S1,

perhaps asymmetric to the right, with decreased filling of the right nerve root. She also underwent a discogram that was positive at the L4-5 and L5-S1 levels. In a December 11, 2003 report, Dr. Wetherington reported that Atherton had undergone discograms at L3-4, L4-5 and L5-S1, as well as a follow-up CT scan. These tests revealed "quite significant degenerative disc disease at L5-S1 with focal extravasation of the contrast with material consistent with a posterior angular tear. In addition, the L4-5 level showed diffused disc disruption."

Dr. Wagner examined Atherton on December 24, 2003. She informed Dr. Wagner that she was in constant pain in her lower back going down her right leg to her calf area and took Vicodin every four hours. She stated that the steroid injections had not improved her symptoms. At that time, Atherton was not in a physical therapy program. She had a "diffuse limp and not a lower extremity limp." She was able to walk on her toes and her heels, but complained of "severe pain at all times and in all areas and in all motions of the back." Dr. Wagner noted that a discogram from May showed a leak at L4/L5 and L5/S1, and that a myelogram from August was "essentially negative. The CAT scan accompanying this is essentially negative with very poor dye distribution in the myelogram." Dr. Wagner noted that Atherton presented to him as a "hysterical patient." He wrote that it was unlikely she would improve with surgery and that she "presents with

the classical hysterical pattern of complaints and pain and inappropriate behavior."

Atherton underwent posterior spinal fusion surgery at L4/L5/S1 with Dr. Wetherington on January 5, 2004. She had follow-up appointments with Dr. Wetherington in February and April of 2004. In February, Dr. Wetherington noted that Atherton was doing "reasonably well" and was ambulating without a walker or a cane. Dr. Wetherington also reported that, since the surgery, Atherton had visited the emergency room after falling at her home, but that her x-rays did not reflect any change. She was asked to "increase her activities and walk on a regular basis, do a treadmill or even a stationary bicycle."

On February 27, 2004, Atherton was examined by Dr. Joshi, who reported that "she was feeling much better, her leg pain greatly improved and [her] ambulation had no instability." In April of 2004, Dr. Wetherington found Atherton to be doing "quite well," while noting that she seemed "to be very cautious with her movements and activities," and encouraged her to become more physically active. Dr. Wetherington also ordered Atherton to begin physical therapy and "to continue using the bone stimulator for three more months considering her continued use of tobacco products."

Dr. Wetherington examined Atherton again on July 15, 2004. He noted she was "doing reasonably well." In regards to Atherton's work status, Dr.

Wetherington opined:

> I think it is reasonable for her to return to work at this point. She did state that she was let go from her previous job and is currently unemployed. If she needs specific notes for a new employer, then we will see if we can accommodate the request and evaluate the work requirements to see if she should be restricted in any way.

Atherton continued to see Dr. Granberg in the fall of 2004. On August 19, 2004, she reported to Dr. Granberg that she had received some benefit from the injections. After examining Atherton on November 18, 2004, Dr. Granberg found that she was "significantly restricted in maintaining [her] posture (sitting/standing/lifting) for long period[s] of time." Her gait was antalgic without an assistive device and her extension and flexion was 50%. On December 10, 2004, Granberg reported that Atherton could not maintain a prolonged position for more than two hours. He also found that she required a weight restriction of fifteen pounds and that she would need to rest for up to four hours in an eight hour work day. Dr. Granberg concluded that Atherton was not capable of employment at the "sedentary work" level due to her "pain complaints" and "deconditioning."

On November 23, 2004, Dr. Joshi reported that Atherton had "great difficulty" ambulating, her paralumbar muscles were very tense, her stooping was very restricted, she could not pick up materials from the floor, and her gait was unsteady at times. Her flexion and extension were 40-50%. Atherton also had

difficulty raising herself from a chair, while sitting and standing produced back pain. Dr. Joshi expressed doubt that Atherton could be "employed gainfully."

Atherton continued her steroid injection treatments with Dr. Granberg in January, February and March of 2005. During these visits, Atherton consistently reported that her pain was "moderate" and "constant." On February 3, 2005, she stated that her pain was "intermittent," mostly in the mornings and evenings. During this visit, Atherton reported that she had pain in her back with radiation to her lower extremities. She found she improved with her treatment, and wanted further injections. However, on February 17, 2005, her pain was still intermittent, and Atherton stated she had received no improvement from the injections. Dr. Granberg also consistently noted during these examinations that her gait was normal. On May 13, 2005, Atherton stated that the trigger point injections provided her "good relief," but that this relief was temporary. Dr. Granberg reported that her "pain is managed adequately at this time," but she was considering more injections in the future.

As part of her worker's comp claim, Atherton underwent an independent medical examination on February 18, 2005, conducted by David T. Volarich, D.O. Atherton represented that she was not able to remain in a fixed position for more than ten minutes without having to move around. She had a slight limp favoring

her lower right extremity.  She walked slowly and very stiffly.  Atherton could

stand on her left leg with no problem, but could not stand on her right leg for more

than a few seconds.  She could squat, but experienced pain when doing so.  Dr.

Volarich found Atherton to have a 65 percent partial disability of the body as a

whole.  He diagnosed her with L4-5 and L5-S1 discogenic pain syndrome with

right leg radicular symptoms post posterior fusion surgery with instrumentation

and failed back syndrome.  Dr. Volarich also noted that Atherton appeared to be

moderately to severely depressed.  She should limit repetitive bending, twisting,

lifting, pushing, pulling, carrying, and climbing.  She should not handle weight

greater than ten pounds.  Furthermore, she should not remain in a fixed position

for more than twenty minutes and should change positions frequently.  His report

further stated that she had a slight limp favoring her right lower extremity.  Dr.

Volarich encouraged Atherton to stop smoking cigarettes and to undergo an

exercise program.

## Legal Standard

A court reviews a decision by the Commissioner to determine whether the

findings are supported by substantial evidence on the record as a whole.  42 U.S.C.

§ 405(g); Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006).  Substantial

evidence is less than a preponderance of the evidence, "but it is enough that a

reasonable mind would find it adequate to support the Commissioner's conclusion." Baker v. Barnhart, 457 F.3d 882, 892 (8th Cir. 2006). The court may not reverse a decision by the Commissioner simply because substantial evidence exists that would support a contrary outcome or because it would have decided the case differently. Cox, 471 F.3d at 906. In determining whether the ALJ's findings are supported by substantial evidence, the court considers evidence both supporting and detracting from the decision. Clay v. Barnhart, 417 F.3d 922, 928 (8th Cir. 2005).

To determine whether the decision of the ALJ is supported by substantial evidence, the court must review the administrative record as a whole and consider:

(1) The credibility findings made by the ALJ;

(2) The plaintiff's vocational factors;

(3) The medical evidence from treating and consulting physicians;

(4) The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments;

(5) Any corroboration by third parties of the plaintiff's impairments;

(6) The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Johnson v. Chater, 108 F.3d 942, 944 (8th Cir. 1997) (quoting Brand v. Secretary of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980)).

A person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d). Under Social Security Administration regulations, the Commissioner must evaluate whether a claimant is disabled using a five step test.

In the first step, the Commissioner considers a claimant's work activity. If the claimant is engaging in substantial gainful activity, he or she is not disabled.

At the second step, the Commissioner determines whether the claimant's impairment is severe. If the claimant does not have a severe medically determinable physical or mental impairment, or a combination of impairments that is severe, he or she does not have a disability.

Then, the Commissioner evaluates whether the severe impairment meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies one of these listings, the claimant is found to be disabled.

If the third step is not satisfied, but the claimant had a severe impairment,

the Commission will consider the claimant's residual functional capacity and whether the claimant can perform his or her past relevant work. If the claimant can still engage in past relevant work, he or she is not disabled.

Finally, if the claimant cannot perform his or her past relevant work, the Commissioner determines whether the claimant can make an adjustment to other work in the national economy. If the claimant can make an adjustment to other work, he or she is not disabled. § 20 C.F.R. 404.1520(a-f); § 20 C.F.R. 416.920.

Under Social Security regulations, if the Commissioner finds that a treating physician's opinion "on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," that opinion will be given controlling weight. § 20 C.F.R. 404.1527(d)(2). Under certain circumstances, the ALJ is not required to give controlling weight to the opinion of a treating physician. "Although a treating physician's opinion is generally entitled to substantial weight, such opinion does not automatically control, since the record must be evaluated as a whole." Charles v. Barnhart, 375 F.3d 777, 783 (8th Cir. 2004) (citations omitted). In addition, a "treating physician's own inconsistency may also undermine his opinion and diminish or eliminate the weight given his opinions."

Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006). The Commissioner must "give good reasons" for the weight accorded to the treating source's opinion. Id.

The ALJ may disregard the conclusions of any medical expert "if they are inconsistent with the record as a whole" or with other substantial evidence in the record. Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001). If the Commissioner does not give controlling weight to the opinion of the treating physician, he will consider all of the following factors in deciding the weight to give to any medical opinion: (1) the examining relationship; (2) the treatment relationship; (3) whether the opinion is supported by relevant evidence; (4) consistency of the opinion with the record as a whole; (5) whether the opinion comes from a specialist providing an opinion relating to his or her specialty; and (6) other factors. § 20 C.F.R. 404.1527(d)(1-6). In addition, "[g]enerally, if a consulting physician examines a claimant only once, his or her opinion is not considered substantial evidence." Charles, 375 F.3d at 783.

### The ALJ's Findings

The Administrative Law Judge found that Atherton was not under a "disability" as defined by the Social Security Act. Although the ALJ concluded that Atherton's lumbar degenerative disc disease status after her lumbar fusion surgery was a "severe" impairment, she also concluded that Atherton had the

residual functional capacity to perform work at the light exertional level. Specifically, the impairment did not prevent Atherton from performing her past relevant work as a gambling dealer or a cashier. The ALJ also found that Atherton's allegations regarding her limitations were not totally credible. In addition, Atherton had no limitations in her activities of daily living, social functioning, or concentration, persistence or pace that were attributable to a medically determinable mental impairment.

## Discussion

Atherton alleges that the ALJ erred in her finding of Atherton's residual functional capacity (RFC). Specifically, Atherton argues that the ALJ did not afford enough weight to the opinions of Drs. Volarich, Joshi and Granberg. Atherton asserts that the ALJ should have not discounted Dr. Volarich's opinion simply because he only saw her once for an independent medical exam. In addition, she argues that the ALJ should not have found that both Dr. Joshi and Dr. Granberg produced inconsistent reports, and should have accorded more weight to these opinions.

First, Atherton argues that the ALJ erred in disregarding the opinion of Dr. Volarich. Dr. Volarich diagnosed Atherton with L4-5 and L5-S1 discogenic pain syndrome with right leg radicular symptoms post posterior fusion surgery with

instrumentation and failed back syndrome. He found that she had a slight limp favoring her right lower extremity. Dr. Volarich placed the following restrictions on Atherton: she should limit repetitive bending, twisting, lifting, pushing, pulling, carrying, and climbing; she cannot handle weight greater than ten pounds; she cannot remain in a fixed position for more than twenty minutes; and, she should change positions frequently.

The ALJ noted that Dr. Volarich was not a treating physician, and that he only examined Atherton once for an Independent Medical Examination. Dr. Volarich examined Atherton as part of an Independent Medical Examination on February 18, 2005. Under Social Security regulations, the opinion produced as a result of "individual examinations, such as consultative examinations or brief hospitalizations," are not accorded as much weight as the opinion of a treating physician. § 20 C.F.R. 404.1527(d)(2). Generally, when a consulting physician examines a claimant only once, his or her opinion is not considered substantial evidence. Lauer v. Apfel, 245 F.3d 700, 705 (8th Cir. 2001); § 20 C.F.R. 404.1527(d)(2). Because Dr. Volarich was not a treating physician, and only completed an Independent Medical Examination, the ALJ articulated an adequate reason for according less weight to his opinion.

Secondly, Atherton argues that the ALJ did not accord sufficient weight to the opinion of Dr. Ashwin Joshi, her primary care physician. The ALJ did note that Dr. Joshi's report of November 23, 2004 differed from his report of March 2004. Dr. Joshi's reports also appear to contradict other medical evidence on the record. In November of 2004, Dr. Joshi noted that Atherton had "great difficulty" ambulating, her gait was unsteady at times, her paraspinal muscles were tense, and she had paralumbar muscle spasms. He noted that her stooping was very restricted and that she could not bend to pick up materials from the floor. He concluded by expressing doubt Atherton could be employed gainfully. The ALJ noted, however, that this evidence was inconsistent with Dr. Joshi's own objective findings, as well as with his own findings from an earlier time and the objective findings of other treating physicians.

The ALJ articulated a sufficient basis upon which to accord less weight to the opinion of Dr. Joshi. An ALJ can accord lesser weight to the opinion of a medical expert when the expert's findings are inconsistent with objective medical evidence. "The ALJ is required to assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record. Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007); 20 C.F.R. § 404.1527(d)(2). A court will uphold an ALJ determination to give less weight to

17

the opinion of a treating physician where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions. Reed v. Barnhart, 399 F.3d 917, 921 (8th Cir. 2005) (internal quotations omitted). Therefore, the ALJ's articulated reasons for discounting the opinion of Dr. Joshi – that his March 2004 and November 2004 reports were inconsistent and there was inconsistency between his opinions and the objective medical evidence – are sufficient reasons to afford less weight to his opinion.

Finally, Atherton argues that the ALJ erred in not according more weight to the opinion of Dr. Granberg, another treating physician. The ALJ noted that on December 10, 2004, Dr. Granberg reported that Atherton was not capable of sedentary work at that time due to her pain complaints and deconditioning. He noted that her symptoms were persistent lower back pain, spasms, and fatigue.

The ALJ found that the limitations imposed by Dr. Granberg were "based on the outward symptoms of limping and muscle spasms." However, in his November and December 2004 examinations, Dr. Granberg stated that Atherton was not limping and he did not record any muscle spasms. The ALJ also noted the inconsistency between these examinations and the December 10, 2004 report. When a physician's statement is "not supported by diagnoses based on objective

evidence," that statement will not support a finding of disability. Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003). Because Dr. Granberg based his opinions on Atherton's outward symptoms and pain complaints, rather than on objective evidence of disability, there was an adequate reason for the ALJ to accord less weight to his opinion. See e.g., Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir. 1993) (finding ALJ justified in discrediting opinion of primary treating physician when his conclusion "rested solely on Woolf's complaints of pain"). This is particularly true in light to the finding that Atherton's subjective complaints were not totally credible, which is discussed below.

The ALJ adequately considered the entire record in her determination that Atherton had the residual functional capacity to perform her past relevant work, and there was substantial evidence in the record to support this determination. For one, there is medical evidence on the record to support this finding. Dr. Wetherington, one of Atherton's treating physician's, reported improvements following Atherton's surgery. On July 15, 2004, Dr. Wetherington stated that "[i]n reference to her work, I think it is reasonable for her to return to work at this point. . . . If she needs specific notes for a new employer, then we will see if we can accommodate the request and evaluate the work requirements to see if she should be restricted in any way." This work release supports the finding of the

ALJ that Atherton had the residual functional capacity after July of 2004 to perform some light work. Atherton does not put forth any argument as to why this opinion should be discounted.

The ALJ found that Atherton's allegations regarding her limitations were not totally credible, and there is substantial evidence to support this conclusion. The ALJ found that Atherton's "reported pain suggests the possibility of a greater restriction on her functional abilities than is demonstrated by the objective medical evidence." An ALJ may make a factual determination that a claimant's subjective complaints of pain are not totally credible "in light of objective medical evidence to the contrary." Baker v. Barnhart, 457 F.3d 882, 892-3 (8th Cir. 2006); see also Jones v. Callahan, 122 F.3d 1148, 1151-52 (8th Cir. 1997) (holding that the objective medical evidence, "coupled with evidence that Jones exaggerated the severity of his symptoms, dictated a finding that Jones's testimony was not fully credible"). In the record, there were several physician reports that suggested Atherton was exaggerating her symptoms. In April of 2002, Dr. Yadava noted that Atherton "display[ed] a significant amount of symptom magnification of pain behavior." He also found "a significant amount of disparity between her functional abilities and her objective physical exam findings." One month later, Atherton's therapist stated that Atherton's complaints "do not correlate with

expected indicators of pain." In addition, Dr. Wagner noted that Atherton presented to him as a "hysterical patient." He wrote that she "present[ed] with the classical hysterical pattern of complaints and pain and inappropriate behavior." These reports provide further basis for the ALJ's determination that Atherton's subjective complaints were not totally credible.

In evaluating Atherton's allegations, the ALJ also examined her work history, and found that it suggested a financial motive for exaggeration of her symptoms. Atherton had been receiving Social Security Income payments for a number of years until October 2000. The payments were stopped because of Atherton's employment. But in the eighteen months leading up to the termination of benefits, Atherton's reported earnings were higher than they were in the eighteen months after her disability payments terminated. This inconsistency also supports the ALJ's finding that Atherton's subjective complaints were not totally credible.

The ALJ also noted that Atherton had been repeatedly advised to stop smoking and to exercise, but she had failed to stop smoking and she had not followed any advice that she attempt to build up her strength and conditioning. The ALJ determined that Atherton's failure to follow these recommendations undercut her credibility because Atherton was "not making an effort to help

herself deal with her symptoms." The ALJ then noted that it was partly on the basis of this "deconditioning" that work restrictions had been placed on Atherton by her treating physicians. Atherton's failure to follow the advice of her physicians was a proper consideration for the ALJ to take into account in determining the weight to be given to Atherton's subjective complaints. See Gowell v. Apfel, 242 F.3d 793, 797 (8th Cir. 2001) (Social Security disability claimant's refusal to follow recommendations of physicians may properly be considered when determining credibility); see also Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) (noting Kelley's "failure to quit smoking," and finding that a "failure to follow a prescribed course of treatment without good reason can be a ground for denying an application for benefits").

Considering the adequate findings for discounting the opinions of Dr. Volarich, Dr. Joshi and Dr. Granberg and for crediting the opinion of Dr. Wetherington, as well as other evidence in the record, I find that the ALJ's determination that Atherton retained the residual functional capacity to perform light exertional work and her finding of no disability is supported by substantial evidence in the record as a whole, and should therefore be upheld.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed.

A separate judgment in accord with this Memorandum and Order is entered this date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 4th day of February, 2008.